IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-3331-CV-S-RED |
| ) | |
| ALYSHA FRIEND, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Now before the Court is Defendants Friend's and Hardy's Motion for Summary Judgment (#30). After careful consideration, the Court **GRANTS** the motion.

The circumstances surrounding the death of Dominic James are undoubtedly tragic. Though Dominic died five years ago this August, the grief of his loss remains. The Dilleys' abhorrent conduct has not gone unnoticed, and they have been held accountable. But this case is not against the Dilleys, it is against public officials within Missouri's foster care program. The conduct of these individuals is measured by a different standard than the Dilleys' conduct. As will be discussed below, the defendants are immune from liability unless they "knowingly violate[d] the law" or their actions were "plainly incompetent." Mere negligence is not sufficient to hold the defendants liable for their official acts. Both this Court and the Eighth Circuit applied this standard in the *James* case and concluded that the defendants could not be liable to Dominic's father, Sidney James. This Court is bound by the Eighth Circuit's decision in now deciding whether the defendants can be liable to Dominic's mother, Stephanie Ford.

One could conclude, particularly with 20/20 hindsight, that the defendants may not have acted as responsibly as we desire of our public officials. The Eighth Circuit even noted that the

defendants "were aware of facts from which an inference *might* have been drawn that a substantial risk of harm existed" and that the defendants *may* have been "insufficiently skeptical about the Dilleys' explanations for Dominic's injuries." Just like in the *James* case, however, mere negligence cannot override the defendants' qualified immunity in this case. In light of the applicable law and the Eighth Circuit's decision in the *James* case, it is the conclusion of this Court that the defendants are entitled to the protection of qualified immunity on Stephanie Ford's claims.

**BACKGROUND**

This case arises out of the death of Dominic James, Sidney James's and plaintiff Stephanie Ford's son. The Department of Family Services (DFS) took custody of Dominic on June 18, 2002. DFS first attempted to place Dominic with Ford's parents, but when that was unsuccessful it placed Dominic with John and Jennifer Dilley. Defendants Alysha Friend and Kristy Hardy did not participate in the original placement decision.

Shortly after Dominic's placement with the Dilleys, Dominic's parents expressed concern to defendants Friend and Hardy about injuries on Dominic's body. Friend and Hardy asked the Dilleys about the injuries and were told that Dominic had tripped while running outside and that he had run into the corner of a dresser.

On July 22, 2002, Dominic's Family Support Team (FST) met. The group included Friend, Hardy, deputy juvenile officer Autumn Masaoay, Dominic's guardian ad litem Michelle Law, Dominic's parents' attorney Sandra Baker, and Dominic's parents. Concerns were expressed regarding Dominic's injuries and his affect during visits.

On August 11, 2002, John Dilley called 911 to report that Dominic was having seizures. Dominic was found to be unresponsive and was airlifted to a hospital, where he was treated for four-

2

and-a-half days. On August 13, 2002, one of the emergency responders called the DFS hotline to express concern about bruises on Dominic's back. DFS assigned Charlene Valade to investigate possible abuse by the Dilleys.

Valade interviewed both Jennifer Dilley and Ford at the hospital on August 13 and examined Dominic. Jennifer Dilley told Valade that Dominic's back bruises had resulted from sliding up and down on his booster seat and that she and her husband had put a towel on the back of the seat to prevent further bruising. Jennifer Dilley told Valade that the mark on Dominic's eye was the result of his running into the edge of a dresser several weeks earlier.

Valade found Jennifer Dilley's explanations of Dominic's injuries to be credible and did not observe any injuries that she considered to be signs of abuse. Valade also spoke to a number of hospital personnel. She spoke with Jennifer Dilley about scheduling a home visit and asked Dilley to call her after Dominic was released from the hospital. Valade intended to call the Dilleys on August 19 to schedule a home visit if she had not heard from Jennifer before that date.

Friend visited Dominic twice in the hospital on August 12. She spoke with hospital personnel, the Dilleys, and Dominic's parents. Hospital personnel told her that Dominic's seizures were most likely caused by a viral infection. Friend also spoke to Valade, who indicated that she had not found any signs of abuse and would probably "unsubstantiate" the hotline report. The doctors who examined Dominic at the hospital saw no evidence of shaken baby syndrome and observed no objective signs of physical abuse.

On August 14, 2002, a 60-day FST meeting was held to discuss Dominic's case. With the exception of Hardy, all of the team members were at the meeting. Friend informed the group about the hotline report and said that the call would be "unsubstantiated." Masaoay, Law, and Baker

3

expressed concerns about the bruising on Dominic's body and the seizure he had experienced during his hospitalization and voiced their belief that Dominic should be placed in a different home. Although Friend initially expressed her opposition to moving Dominic, she eventually agreed that he should be moved to another foster home.

Following the August 14 FST meeting, Friend met with Hardy, who told her that in the absence of a court order, a substantiated report of abuse, or DFS suspicion of abuse, DFS policy required a two-week notice before Dominic could be placed in a new home. Dominic was subsequently released from the hospital and returned to the care of the Dilleys. Neither Friend nor Hardy told any of the other FST members that Dominic was returned to the Dilley home.

On August 18, 2002, Dominic was rushed to the hospital, where it was determined that he had suffered abusive head trauma, subdural hemorrhage, and massive bilateral retinal hemorrhage. He died from those injuries on August 21. John Dilley was later convicted of child abuse resulting in death and of second degree assault, charges that arose out of Dominic's death.

Sidney James and Stephanie Ford filed separate lawsuits in federal court. This Court granted summary judgment on Sidney James's claims on February 10, 2005, and the Eighth Circuit affirmed this Court's decision on August 10, 2006. *See James v. Friend et al.*, 03-3013-CV-S-RED. This Court then ordered Stephanie Ford to show cause why her claims should not be dismissed pursuant to the rule announced in *James v. Friend*. Ford responded that Sidney James had not included a procedural due process claim in his complaint, but she had included such a claim in her complaint. Her response did not advise the Court of any reason why her substantive due process claim should not be dismissed. Accordingly, the Court dismissed Ford's substantive due process claim on October 30, 2006, for the same reasons that Sidney James's claims were dismissed. The only

4

remaining claim is Ford's procedural due process claim.

Friend and Hardy filed the pending motion on March 2, 2007, requesting summary judgment on Ford's remaining claim. Friend and Hardy argue that they are immune from liability.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.*

A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The evidence in favor of the nonmoving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

The summary judgment procedure is not a "disfavored procedural shortcut." *Id.* Rather, it is "an integral part of the Federal Rules as a whole." *Id.* Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1014 (W.D. Mo. 1988).

## DISCUSSION

5

Government officials are often immune from liability for their actions, even when those actions are negligent. The Eighth Circuit stated in the *James* case that "immunity will extend to the officials' actions if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation." *James v. Friend*, 458 F.2d 726, 730 (8th Cir. 2006). The Eighth Circuit has also stated that "qualified immunity protect[s] all but the *plainly incompetent* or those who *knowingly violate the law*." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (emphasis added). The Court must follow this law.

In the *James* case, the Eighth Circuit decided that Friend's and Hardy's conduct was objectively legally reasonable in light of the information they possessed. Specifically, the Eighth Circuit stated that "James has not presented evidence that Friend and Hardy acted with any malicious intent, nor has he explained why their actions were not justified by their observance of the state's procedures regarding the administration of the foster care system." *James*, 458 F.2d at 730. The Court also stated that "taken in the light most favorable to James . . . the record does not support an inference that Friend . . . belie[ved] . . . that Dominic was being abused in the Dilley home," and that there is "no evidence of Hardy's subjective state of mind." *Id.*

While Dominic's death is certainly tragic, and Friend and Hardy's conduct was arguably negligent, the Eighth Circuit has already determined that the defendants' conduct was not plainly incompetent or a knowing violation of the law. The Eighth Circuit ruled that qualified immunity protects Friend and Hardy in the *James* case, and this Court finds that the reasoning in that case is equally applicable to the procedural due process claim of Stephanie Ford in this case.

## CONCLUSION

The Court **GRANTS** Defendants Friend's and Hardy's Motion for Summary Judgment

6

(#30). Judgment as a matter of law is hereby entered in favor of defendants Friend and Hardy and against plaintiff Ford on all remaining claims in Ford's complaint.

**IT IS SO ORDERED.**

DATE:	June 1, 2007	  */s/ Richard E. Dorr*  
　　　　　　　　　　　　　　　　RICHARD E. DORR, JUDGE  
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT